FILED

2020 Jul-31  AM 11:38
U.S. DISTRICT COURT
N.D. OF ALABAMA

## THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| **JEFFERY MABRY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | )    **Civil Action Number** |
| | )    **4:19-cv-01023-AKK** |
| **ANDREW SAUL,** | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

### MEMORANDUM OPINION

Jeffery Mabry brings this action pursuant to Section 405(g) of the Social Security Act ("the Act"), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). The issues before the court are whether the Administrative Law Judge ("ALJ") erred in finding that Mabry's degenerative disc disease is not a severe impairment and that Mabry has the residual functional capacity ("RFC") to do work in the national economy. For the reasons explained below, the court finds the ALJ's decision is supported by substantial evidence and is thus due to be affirmed.

### I.

On January 19, 2017, Mabry applied for Title II disability insurance benefits alleging a disability onset date of January 31, 2015, due to rheumatoid arthritis,

osteoarthritis of the right shoulder, congestive heart failure, diabetes, esophageal reflux, bulging disc, sciatic neuritis, lower back pain, hypertension, and knee pain. R.16, 45–46. After the SSA initially denied Mabry's claim, he requested and appeared before an ALJ. R.16. The ALJ found Mabry was not disabled, R. 24, and the decision became final when the Appeals Council denied review. R. 1. Mabry then filed this action for judicial review pursuant to § 405(g) of the Act, 42 U.S.C. § 405(g). See doc. 8 at 1.

## II.

The standard of review governing this case is whether substantial evidence supports the Commissioner's findings, see 42 U.S.C. § 405(g); Biestek v. Berryhill, 139 S.Ct. 1148, 1155 (2019), and whether the Commissioner applied the correct legal standards, Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993).

Under this statutory standard of review, substantial evidence defers to the presiding ALJ "who has seen the hearing up close. Biestek, 139 S.Ct. at 1157. The substantial evidence standard requires a court to look to the administrative record and ask whether it contains sufficient evidence to support the agency's factual determinations. Id. 1154. The threshold for "substantial" is not high; it is frequently referred to as "more than a mere scintilla." Id. All that is required under this standard is that a reasonable mind would accept the evidence as adequate to support the conclusion. See Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). If the

Commissioner's decision is supported by substantial evidence, the court must affirm, even if the evidence preponderates against it. <u>Dyer v. Barnhart</u>, 395 F.3d 1206, 1210 (11th Cir. 2005). The court may not reconsider the facts, reweigh the evidence, or substitute its judgment for the Commissioner's. <u>Id</u>.

In contrast, the Secretary's legal conclusions are reviewed de novo. <u>Davis</u>, 985 F.2d at 531. The Commissioner's failure to apply the correct law is reversible error. <u>Cornelius v. Sullivan</u>, 969 F.2d 1143, 1145 (11th Cir. 1991).

## III.

To qualify for disability benefits, the claimant must prove he or she is disabled within the meaning of 42 U.S.C. § 423(d)(1)(A). The Act defines disability as the "inability to engage in any substantial activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." <u>Id</u>. A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The Social Security Administration has established a five-step process for determining whether an individual is disabled. 20 C.F.R. § 404.1520(a).

At step one, the Commissioner must determine whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If an individual

engages in substantial gainful activity, he is not disabled. If the individual is not engaged in substantial gainful activity, the analysis proceeds to step two.

At step two, the Commissioner must determine if the claimant suffers from a severe impairment. An impairment is severe if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment, he is not disabled. If the claimant does have a severe impairment or combination of impairments, the Commissioner goes on to step three.

At step three, the Commissioner must determine whether the claimant's impairment or combination of impairments is severe enough to meet the criteria of an impairment listed in 20 C.F.R. §§ 404.1525, 404.1526. If the claimant's impairment meets the criteria of a listing and the duration requirement, then the claimant is disabled. If not, the analysis continues to step four.

At step four, the Commissioner determines whether the claimant can perform past relevant work in light of the claimant's RFC. 20 C.F.R. § 404.1520(e). RFC is the individual's ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. In evaluating RFC, the Commissioner evaluates all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 404.1520(e)–(f), 404.1545. Past relevant work means work performed within the last 15 years or 15 years prior to the date of alleged disability. If the

claimant is unable to do past relevant work or does not have past relevant work, the analysis turns to the final step.

At the final step, the Commissioner must determine whether the claimant is able do other work considering his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g).

## IV.

In performing the five-step analysis, the ALJ found that Mabry met Step One since he had not engaged in substantial gainful activity during the relevant period. R. 18. Next, the ALJ found that Mabry satisfied Step Two since he suffered from the impairments of hypertension and degenerative joint disease in the right shoulder and knees.[1] Id. The ALJ then determined that Mabry failed to satisfy Step Three because he "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments." R. 19. At Step Four, the ALJ found that Mabry had the RFC to perform

> light work . . . with further limitations as follows. He must be allowed a sit/stand option where he will be allowed to alternate positions once every hour for five minutes . . . . He may occasionally balance, stoop, crouch, and climb ramps or stairs. He can never kneel, crawl, or climb ladders, ropes, or scaffolds. He may frequently reach except he can never reach overhead and he can occasionally push or pull using his upper or lower extremities. He must avoid frequent exposure to extreme cold, heat, wetness, humidity, and . . . vibration. He must also avoid

---

[1] The ALJ concluded, however, that Mabry's alleged degenerative disc disease in his back was not a severe impairment, given that there was "no medical imaging and only mildly positive physical examination signs to support this impairment." R.18. Mabry challenges this finding.

exposure to hazards such as unprotected heights, hazardous machinery, and vibrating tools.

R. 20. In regard to Mabry's statements of pain concerning his medically determinable impairments, the ALJ found that Mabry's statements concerning the intensity, persistence, and limiting effects of his symptoms are "not entirely consistent with the medical evidence and other evidence in the record." Id. Based on his RFC, the ALJ held that Mabry is "unable to perform any past relevant work." R. 22. Lastly, in Step Five, the ALJ considered Mabry's age, education, work experience,[2] and RFC and determined that "there are jobs that exist in significant numbers in the national economy that [Mabry] can perform." R. 22–23. Thus, the ALJ found that Mabry "has not been under a disability as defined by the Social Security Act for the relevant period." R. 23.

## V.

Mabry challenges: 1) the determination that he did not suffer from a severe impairment related to his alleged degenerative disc disease in his back, and 2) the light work RFC determination. See doc. 8 at 6-12. The court addresses each contention of alleged error in turn.

---

[2] Mabry was 54 years old, had only completed the eleventh grade, and had past work history as a mechanic helper and sandblaster. R. 22, 34.

**A.**

At step two, although the ALJ found that Mabry suffered from severe impairments, the ALJ concluded that Mabry did not suffer from a severe impairment related to his lumbar spine. Mabry contends that the ALJ ignored his treatment history that is "replete with his complaints of and treatment for his lower back pain as well as physical examinations documenting abnormalities of his lumbar spine." See doc. 8 at 6. Because Mabry is attempting to establish disability based on his subjective complaints, he must provide evidence of an underlying medical condition and either objective medical evidence that confirms the severity of the alleged pain or that the objectively determined medical condition is so severe that it can be reasonably expected to give rise to the alleged pain. Dyer, 395 F.3d at 1210. Mabry failed to make this showing.

A review of the medical evidence reveals that substantial evidence supports the ALJ's finding that there is "no medical imaging and only mildly positive physical examination signs to support this impairment." R. 18.  As an initial matter, Mabry's reliance on medical records from 2011–2014 and 2018, see doc. 8 at 6–7, to support his contention of alleged error is misplaced. These records are outside the relevant period and are of little relevance to Mabry's claims. Santos v. Soc. Sec. Admin., Comm'r, 731 F. App'x 848, 856 (11th Cir. 2018). Moreover, contrary to Mabry's claims about an MRI, R. 21, there is no evidence of one in the record. In fact, one of

Mabry's doctors noted that "[t]here are no available labs or x-rays for review." R. 284.

The other evidence also does not support Mabry's contentions of a severe lower back impairment. Reviewing the record chronologically, the medical entries from 2015 and 2016 provide little information regarding the severity of the lower back impairment. The records merely state that Mabry complained about back pain and that physicians prescribed him medications to manage the pain. R. 201–06. As for 2017, at Mabry's disability determination appointment in March, Dr. Dallas Russell concluded that Mabry has disc degenerative disease and an abnormal gait and limp. R. 281, 283. But Mabry also tested negative for straight leg raise testing, had no spasms, no deformity or tenderness, and had only a slight diminished range of motion in his back, R. 283, 285, which undermines Mabry's contention that Dr. Russell's findings support his position.

The following month, Mabry visited Dr. Stacy Moore and relayed that he had a herniated disc in his lumbar spine. A physical examination documented muscle spasm and tenderness with moderate pain. R. 294. Dr. Moore prescribed medications for pain and to control the spasms. R. 291. The ALJ noted that Dr. Moore's examination partially supported Mabry's allegations but his allegations are otherwise "not consistent with the record." R. 21.

8

Finally, Mabry cites to a 2018 visit with Dr. William McClanahan where he allegedly complained of "severe joint pain in his shoulders, knees, back and hands." See doc. 8 at 8. However, Dr. McClanahan's notes show that Mabry reported no back pain and no difficulty walking. R. 353. Additionally, Dr. McClanahan noted that Mabry was able to manage activities of daily living adequately but needed to make adjustments to make them easier to perform. R. 354. To close, based on this record, substantial evidence supports the ALJ's finding that Mabry's degenerative disc disease is not a severe impairment.

But even if the disc degenerative disease is a severe impairment, it would not qualify as a listed impairment for Step Three. Listing 1.04 covers disorders of the spine and requires in part:

> Evidence of nerve root compression characterized by [various symptoms] and **if there is involvement of the lower back, positive straight leg testing (sitting and supine)** or

> Lumbar spinal stenosis resulting in pseudoclaudication, **established by findings on appropriate medically acceptable imaging**, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. pt. 404, Subpt. P, App. 1 § 1.04 (emphasis added).   In Mabry's case, there is insufficient evidence of nerve root compression, since Mabry did not have positive straight leg testing, which is required when the lower back is involved.  R. 283. Also, Mabry's alleged lumbar spinal stenosis does not qualify under Listing 1.04, due to the absence of "appropriate medically acceptable imaging" or, in this case, no

imaging at all. Moreover, the ALJ used Mabry's degenerative disc disease in the RFC finding, noting she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent." R. 20. See Tuggerson, 572 F. App'x at 951.

## B.

Mabry's final argument is related to the RFC finding of light work. Doc. 8 at 10–12. Mabry argues the evidence shows he "would not be capable of performing the demands of work above the sedentary level of exertion." R. 11–12. But, Mabry does not adequately develop this argument and has failed to meet his burden of properly presenting this issue for review. See N.L.R.B. v. McClain of Georgia, Inc., 138 F.3d 1418, 1422 (11th Cir. 1998); Morgan v. Soc. Sec. Admin., Comm'r, No. 4:17-cv-01148-ACA, 2019 WL 1466259, at *3 (N.D. Ala. Apr. 3, 2019); Wood v. Berryhill, No. 4:18-CV-558-RDP, 2019 WL 3413785, at *6 n.3 (N.D. Ala. July 29, 2019).

Moreover, as the ALJ noted, Mabry's RFC is "supported by medical records from treating sources, examination and evaluation reports by consulting doctors, and opinions from non-examining state agency medical consultants." R. 22. Indeed, the record shows that Dr. Russell stated Mabry's motor skills, handling, fingering, gripping, posture, and reaching are normal; that Mabry would "be sensitive" to heat, cold, vibration, humidity, and noise; and would have difficulty pushing, pulling,

sitting, standing, walking, climbing, stooping, bending, crawling, kneeling, and crouching. R. 284. Relevant here, the ALJ factored these limitations in her RFC determination, providing for a sit/stand option where Mabry can alternate positions once every hour for five minutes, and limiting Mabry to occasionally push or pull, balance, stoop, crouch, and climb ramps or stairs. R. 19. The ALJ further notes that Mabry should avoid frequent exposure to extreme heat, cold, wetness, humidity, vibration, and hazards such as unprotected heights and hazardous machinery. R.19, 20. He also can never kneel or crawl. R. 19. Therefore, because the ALJ accommodated Mabry's disc degeneration disease in providing these limitations, there is no error in her RFC determination.

In challenging the RFC, Mabry also alleges that he fits within Medical Vocational Guidelines 201.10. See doc. 8 at 12. Rule 201 and its subparts apply only to "maximum sustained work capability limited to sedentary work…" 20 C.F.R. § Pt. 404, Subpt. P, App. 2. Consequently, this rule does not apply to Mabry who has a light work RFC. Additionally, because Mabry cannot perform a full range of work at a given level of exertion, the ALJ "appropriately called in a vocational expert to consider the specific nuances of [Mabry's] limitations and advise him on the available jobs based on those limitations."[3] White v. Colvin, No. 5:12-CV-03944-

---

[3] The vocational expert testified that given Mabry's age, education, work experience, and RFC, he was able to "perform the requirements of representative light, unskilled occupations." R. 23.

KOB, 2014 WL 1259725 *17 (N.D. Ala. Mar. 26, 2014). Therefore, the ALJ did not err in failing to apply Grids Rule 201.10.

Finally, Mabry alleges that the ALJ placed too much emphasis on Mabry's lack of "voluminous" records and failed to properly consider his "inability to afford certain medical treatment." See doc. 8 at 10–11. To the contrary, the contents of the medical records, rather than the ALJ's assertion that Mabry had few medical records, led the ALJ to formulate her opinion that Mabry's pain was not debilitating. R. 20–22. Also, the ALJ factored Mabry's lack of insurance into consideration by noting that Mabry informed Dr. Russell that his insurance status limited his treatment. R. 21. And there is nothing to support a finding that the ALJ held Mabry's failure to receive treatment against him. See Bellew v. Acting Comm'r of Soc. Sec., 605 F. App'x 917, 921 (11th Cir. 2015) (finding that ALJ's failure to consider evidence regarding the claimant's ability to afford treatment is not reversible error if the ALJ did not rely significantly on the claimant's noncompliance). To close, the record shows that the ALJ used the contents of the medical evidence rather than Mabry's failure to seek treatment in rendering her opinion. Therefore, Mabry's argument is without merit.

## VI.

Based on the foregoing, this court concludes that the ALJ's determination that Mabry is not disabled is supported by substantial evidence and that the ALJ applied

the proper legal standards in reaching this determination. Thus, the Commissioner's final decision is **AFFIRMED**. A separate order in accordance with the memorandum of decision will be entered.

**DONE** the 31st day of July, 2020.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE